**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

MICHELLE HU and JOHN DOES 1-100,
*on behalf of themselves and others similarly situated*,

              Plaintiffs,

                 v.

HERR FOODS INCORPORATED,

              Defendant.

_____

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiffs, MICHELLE HU and JOHN DOES 1-100, individually and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their Complaint against the Defendant, HERR FOODS INCORPORATED, allege the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, respectfully allege, upon information and belief, as follows (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

## NATURE OF THE ACTION

1. Plaintiffs, MICHELLE HU and JOHN DOES 1-100, on behalf of themselves and others similarly situated, by and through their undersigned attorneys, bring this class action

against Defendant, HERR FOODS INCORPORATED, for the deceptive practice of marketing its HERR'S® potato chip, cheese curl, tortilla chip, popcorn and onion ring snack products as having "No Preservatives Added" when they contain citric acid, a non-natural, chemically processed ingredient and preservative.

2.  This case is about the deceptive manner in which the Defendant marketed their Products (defined below) to the general public during the Class Period.

3.  Defendant sold Plaintiffs and Class members, and continues to sell consumers the following products with misleading "No Preservatives Added" language:

a.  Herr's® "Baby Back Ribs" Potato Chips
b.  Herr's® Baked Cheddar Potato Chips
c.  Herr's® Nacho Cheese Tortilla Chips
d.  Herr's® Baked Cheese Curls
e.  Herr's® Buffalo Cheese Curls
f.  Herr's® Honey Cheese Curls
g.  Herr's® "Jalapeno Poppers" Cheese Curls
h.  Herr's® "Old Bay" Cheese Curls
i.  Herr's® Cheese Popcorn
j.  Herr's® Hot Cheese Popcorn
k.  Herr's® White Cheddar Popcorn
l.  Herr's® Onion Rings
m.  Any other Herr's® product with misleading "No Preservatives Added" language (collectively, the "Products").

Such Products are detailed under **EXHIBIT A**.

4.  Defendant engaged in deceptive labeling practices by failing to disclose that the Products contain citric acid as a preservative and/or by expressly representing on the product labels and website that the Products have "No Preservatives Added." All of the Products contain citric acid, which is commonly used as a preservative in commercial food and drink products. Food products are fertile ground for bacterial and mold growth. Without the addition of preservatives, the Products would turn stale and moldy in a matter of days and would certainly

2

not keep its fresh taste for months during the Products' shelf life, as Defendant has promised on each and every Product label.

5. By marketing the Products as having "No Preservatives Added", Defendant wrongfully capitalized on and reaped enormous profits from consumers' strong preference for food products made free of added preservatives.

6. Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who, from the applicable limitations period up to and including the present ("Class Period"), purchased for consumption and not resale any of Defendant's Products.

7. Defendant violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

1) *Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, et seq.;*
2) *Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, et seq.;*
3) *Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, et seq.;*
4) *Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;*
5) *California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq., and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, et seq.;*
6) *Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, et seq.;*
7) *Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, et seq.;*
8) *Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) *Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, et seq.;*
13) *Idaho Consumer Protection Act, Idaho Code § 48-601, et seq.;*
14) *Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, et seq.;*
15) *Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, et seq.;*
16) *Iowa Consumer Fraud Act, Iowa Code §§ 714.16, et seq.;*
17) *Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, et seq.;*
18) *Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, et seq., and the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann §§ 365.020, et seq.;*
19) *Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, et seq.;*
20) *Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, et seq,, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, et seq.,*
21) *Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, et seq.;*
22) *Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;*

*23)* Michigan Consumer Protection Act, § § 445.901, *et seq.;*
*24)* Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
*25)* Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
*26)* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*
*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*
*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

8.   Defendant marketed its HERR'S® Products in a way that is deceptive to consumers under consumer protection laws of all fifty states and the District of Columbia. Defendant has been unjustly enriched as a result of its conduct. For these reasons, Plaintiffs seek the relief set forth herein.

## JURISDICTION AND VENUE

9.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

10. The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

11. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

12. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

13. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to New York Statute N.Y. CVP. Law § 302, because they conduct substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiffs' claims arise out of Defendant operating, conducting, engaging in or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendant's acts and omissions outside this state. Additionally, this court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; and Defendant has sufficient minimum contacts with New York

and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. 1391(c)(2) because they are subject to personal jurisdiction in this district.

## PARTIES

*Plaintiffs*

15. Plaintiff MICHELLE HU is, and at all times relevant hereto has been, a citizen of the State of New York and resides in Kings County. During the Class Period, Plaintiff HU purchased the Herr's® Honey Cheese Curls Product for personal consumption within the State of New York. Specifically, Plaintiff HU purchased the Products located in New York County at the purchase price of $1.09 (or more) for an individual Product. Plaintiff HU purchased the Product at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein. Further, should Plaintiff HU encounter the Products in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff HU would still be willing to purchase the current formulation of the Products, absent the price premium, so long as Defendant engages in corrective advertising.

16. Plaintiffs JOHN DOES 1-100 are, and at all times relevant hereto have been, citizens of the any of the fifty states and the District of Columbia. During the Class Period, Plaintiffs

JOHN DOES 1-100 purchased the Product for personal consumption or household use within the United States. Plaintiffs purchased the Product at a premium price and were financially injured as a result of Defendant's deceptive conduct as alleged herein.

*Defendant*

17. Defendant HERR FOODS INCORPORATED is a corporation organized under the laws of Pennsylvania with its headquarters at 20 Herr Dr., Nottingham, PA 19362 and a an address for service of process located at 20 Herr Dr., P.O. Box 300, Nottingham, PA 19362.

18. Defendant develops, markets and sells food products under the "HERR'S®" brand name throughout the United States. The advertising for the Products, relied upon by Plaintiffs, was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. Defendant owns, manufactures and distributes the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

19. Defendant manufactures, markets, advertises and sells its extensive "HERR'S®" line of potato chip, pretzel and onion ring snack products across the United States.

20. Defendant markets numerous products under its "HERR'S®" brand such as the Products purchased by Plaintiffs. The Products are available at numerous retail and online outlets such as Duane Reade, CVS, Rite Aid and Amazon.com.

21. In addition to the "No Preservatives Added" claim on the back of each Product, the official Herr's website displays the entirety of its "HERR'S®" potato chip, cheese curl, tortilla chip, popcorn and onion ring snack product lines with brief product descriptions and full lists of ingredients on each product page. The Products' pages again demonstrate that they are meant to have "No Preservatives Added," with Plaintiff HU's product shown as an example below:



22. By representing that the Products have "No Preservatives Added," Defendant sought to capitalize on consumers' preference for natural products and the association between such products and a wholesome way of life. Consumers are willing to pay more for natural products

because of this association as well as the perceived higher quality, health and safety benefits associated with products labeled as being free of preservatives.

Although Defendant represented the Products as having "No Preservatives Added," the claims are false because the Products contain the added ingredient citric acid, a well-known preservative.

**Defendant's No Preservatives Claims Violate Identical State and Federal Law**

23. Defendant's labeling, packaging and marketing practices are deceptive and or misleading because the Products fail to disclose that the added citric acid is used as a preservative and/or that the Products represent on their product labels that they have "No Preservatives Added." All of the Products use citric acid (2-hydroxypropane-1,2,3-tricarboxylic acid), a non-natural, highly chemically processed ingredient regularly used as a preservative (due to its acidic pH level which creates an environment where bacteria cannot thrive) in food products.

24. The FDCA provides that "[a] food shall be deemed misbranded – (a) (1) its labeling is false or misleading in any particular, or … (k) If it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears labeling stating that fact… ." 21 U.S.C. §§ 343 (a)(1), 343 (k).

25. Defendant's packaging and advertising of the Products also violate various state laws against misbranding which mirror federal law. New York and other state law broadly prohibit the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA, 21 U.S.C. §§ 343 *et seq*.:

26. Pursuant to N.Y. Agm. Law § 201, "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular…11. If it bears or contains any artificial

flavoring, artificial coloring, or permitted chemical preservative, unless it bears labeling stating that fact."

27. The term "chemical preservative" means "any chemical that, when added to food tends to prevent or retard deterioration thereof[.]" 2l C.F.R. § 101.22(a)(5).

28. While citric acid is listed in the fine print on the back of the Product in the list of ingredients (see below), Defendant's deliberately made no mention of the function of the citric acid in violation of state and federal laws.



29. Above are the nutrition facts of the Honey Cheese Curl Product, which lists the following ingredients, among numerous ingredients, citric acid.

30. While the acidic pH of citric acid would most certainly provide tartness to the Products, such explanation is pretextual because the real function of the citric acid in the Products is as a preservative.

31. The U.S. Food and Drug Administration ("FDA") routinely required that food manufacturers disclose the fact that citric acid is used as a preservative. In a Warning Letter dated October 6, 2010, the FDA warned the manufacturers of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites" products, that they are in violation of the FDCA and the federal regulations promulgated pursuant to the FDCA:

32. "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."

33. *See* **EXHIBIT B**, FDA Warning Letter dated October 6, 2010 (emphasis added).

34. Defendant's misleading labeling practices go even further. Apart from not having disclosed the function of the citric acid, Defendant expressly labeled the Products as having "No Preservatives Added," even though such was patently false.

35. Because the Products similarly contain citric acid and Defendant similarly "fail[ed] to declare [such] preservative with a description of [its] functions," see *id*., and because the Products are expressly labeled as having "No Preservatives Added," the Products are misbranded food under the FDCA and state laws which incorporate by reference federal food labeling regulations. 21 U.S.C. §§ 343(a)(1), 343(k); N.Y. Agm. Law § 201; California Health and Safety Code §§ 110660, 110740.

11

**The Federal Food, Drug, and Cosmetic Act**

36. The Federal Food, Drug, and Cosmetic Act (hereinafter, "FDCA"), 21 U.S.C. §§ 301 *et. seq.*, governs the sale of foods, drugs, and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic affects the regulations by which the product must abide. In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example by asking why the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, such as fluoride in toothpaste.

37. Food manufacturers must comply with federal and state laws and regulations governing labeling food products. Among these are the Federal Food, Drug and Cosmetic Act and its labeling regulations, including those set forth in 21 C.F.R. part 101.

38. Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, although still misleading. If any one representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled. New York law similarly does not require proof of actual reliance. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 445 (S.D.N.Y. 2005).

39. New York and federal law have placed similar requirements on food companies that are designed to ensure that the claims companies are making about their products to consumers are truthful and accurate.

40. Defendant's labeling and advertising of the Products violate various state laws against misbranding. New York State law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*.:

> *Pursuant to N.Y. State Education Law § 6815, "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular…"*

41. Defendant's Products were misbranded under New York law because they misled Plaintiff and Class members about the nature of the Products.

42. Although Defendant marketed the Products as having "No Preservatives Added," they failed to also disclose material information about the Products. This non-disclosure, while at the same time branding the Products as having "No Preservatives Added" was deceptive and likely to mislead a reasonable consumer.

43. A representation that a product has "No Preservatives Added" is material to a reasonable consumer when deciding to purchase a product.

44. Plaintiffs did, and a reasonable consumer would, attach importance to whether Defendant's Products are "misbranded," i.e., not legally salable, or capable of legal possession.

45. Plaintiffs did not know, and had no reason to know, that the Products contained preservatives contrary to the "No Preservatives Added" claim.

46. Defendant's Products labeling and misleading website was a material factor in Plaintiffs' and Class members' decisions to purchase the Products. Relying on Defendant's Product labeling and misleading website, Plaintiffs and Class members believed that they were

getting Products that had "No Preservatives Added." Had Plaintiffs known Defendant's Products were highly processed, they would not have purchased them.

47. Defendant's Product labeling as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic Product packaging practice.

48. At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

49. Defendant's false and deceptive labeling is misleading and in violation of FDA and consumer protection laws of each of the fifty states and the District of Columbia, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States. Plaintiffs and Class members would not have bought the Products had they known they were misbranded and illegal to sell or possess.

50. As a result of Defendant's misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

51. Plaintiffs and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct in that they purchased Products with false and deceptive labeling and paid premium prices they otherwise would not have paid over other comparable products that did not claim to have "No Preservatives Added."

## CLASS ACTION ALLEGATIONS

***The National Class***

52. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

***The New York Class***

53. Plaintiff HU seeks to represent a class consisting of the following subclass (the "New York Class"):

> All New York residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

54. Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

55. This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

15

56. Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

a.   whether labeling "No Preservatives Added" on Products containing citric acid was false and misleading;

b.   whether Defendant engaged in a marketing practice intended to deceive consumers by labeling "No Preservatives Added" on Products containing citric acid;

c.   whether Defendant deprived Plaintiffs and the Class of the benefit of the bargain because the Products purchased were different than what Defendant warranted;

d.   whether Defendant deprived Plaintiffs and the Class of the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

e.   whether Defendant caused Plaintiffs and the Class to purchase a substance that was other than what was represented by Defendant;

f.   whether Defendant has been unjustly enriched at the expense of Plaintiffs and other Class members by its misconduct;

g.   whether Defendant must disgorge any and all profits they have made as a result of its misconduct; and

h.   whether Defendant should be barred from marketing the Products as having "No Preservatives Added."

57. Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed

herein.  Plaintiffs purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of New York State law. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

58. Plaintiffs will fairly and adequately represent and pursue the interests of the Class and have retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class.  Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

59. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this

17

forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

60. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

61. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

62. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

63. Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

64. Plaintiff HU realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

65. Plaintiff HU brings this claim on behalf of herself and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL").

66. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

67. Under the § 349, it is not necessary to prove justifiable reliance.  ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim."  *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

68. Any person who has been injured by reason of any violation of the NY GBL may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

69. The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that its Products contain "No Preservatives" were unfair, deceptive, and misleading and are in violation of the NY GBL § 349.

70. The foregoing deceptive acts and practices were directed at customers.

71. Defendant should be enjoined from marketing its products as containing "No Preservatives" as described above pursuant to NY GBL § 349.

72. Plaintiff HU, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
## (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

73. Plaintiff HU realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

74. Plaintiff HU brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

75. Defendant's business act and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

76. The practices of Defendant described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, one or more of the following reasons:

a.      Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Products, which did, or tended to, mislead Plaintiff and the Class about facts that could not reasonably be known by them;

b.      Defendant knowingly and falsely represented and advertised that the Products contain "No Preservatives" with an intent to cause Plaintiff and members of the Class to believe that they do not contain added preservatives;

c.      Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

d.      Defendant caused Plaintiff and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

e.      Defendant failed to reveal material facts to Plaintiff and the Class with the intent that Plaintiff and the Class members rely upon the omission;

f.      Defendant made material representations and statements of fact to Plaintiff and the Class that resulted in Plaintiff and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

g.      Defendant intended that Plaintiff and the members of the Class rely on its misrepresentations and omissions, so that Plaintiff and Class members would purchase the Products.

77. The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that its Products have "No Preservatives Added" were unfair, deceptive, and misleading and are in violation of NY GBL § 349.

78. Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

79. Defendant's actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing the Products as a result of and pursuant to Defendant's generalized course of deception.

80. By committing the acts alleged in this Complaint, Defendant has misled Plaintiff and the Class into purchasing the Products, in part or in whole, due to an erroneous belief that the Products have "No Preservatives Added". This is a deceptive business practice that violates NY GBL § 349.

81. Defendant's "No Preservatives Added" claim misled Plaintiff and is likely in the future to mislead reasonable consumers. Had Plaintiff and members of the Class known of the true facts about the Products, they would not have purchased the Products and/or paid substantially less for similar products.

82. The foregoing deceptive acts, omissions and practices were directed at consumers.

83. The foregoing deceptive acts, omissions and practices set forth in connection with Defendant's violations of NY GBL § 349 proximately caused Plaintiff and other members of the Class to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and other members of the Class are entitled to recover such damages, together with

equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT III

## NEGLIGENT MISREPRESENTATION
### (All States)

84. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

85. Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

86. In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

87. Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

88. Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendant when purchasing the Products, which reliance was justified and reasonably foreseeable.

89. As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have

been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## COUNT IV

## BREACH OF EXPRESS WARRANTIES
### (All States)

90. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

91. Defendant provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that the Products contain natural or all-natural ingredients and no preservatives. The preservatives claims made by Defendant are an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise. Plaintiffs placed importance on Defendant's natural claims.

92. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products with the natures and quality as promised.

93. As a proximate result of Defendant's breach of warranties, Plaintiffs and Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for products that did not conform to what Defendant promised in its promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

## COUNT V

## UNJUST ENRICHMENT
### (All States)

94. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

95. Defendant received certain monies as a result of its uniform deceptive marketing of the Products that are excessive and unreasonable.

96. Plaintiffs and the Class conferred a benefit on Defendant through purchasing the Products, and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on them.

97. Defendant will be unjustly enriched if it is allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a. An Order that this action be maintained as a class action and appointing Plaintiffs as representatives of the Nationwide Class and/or their respective state Class;

b. An Order appointing the undersigned attorney as class counsel in this action;

c. Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d. All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

25

e.   Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class and in the maximum amount permitted by applicable law;

f.   An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (iii) ordering Defendant to engage in a corrective advertising campaign; and (iv) requiring Defendant to reimburse Plaintiffs and all members of the Class the amounts paid for the Products;

g.   Statutory pre-judgment and post-judgment interest on any amounts;

h.   Payment of reasonable attorneys' fees and costs; and

i.   Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: June 20, 2016

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By:  ___/s/ C.K. Lee_____
        C.K. Lee, Esq.